IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 4:08-CR-33-RLV |
| JAMES BARTHOLOMEW HUSKEY | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by and through its counsel, David E. Nahmias, United States Attorney, and Francey Hakes, Assistant United States Attorney for the Northern District of Georgia, and files the following sentencing memorandum in the above-styled case.

This Memorandum will address the factors in 18 U.S.C. § 3553(a) and explain why the sentence recommended after the correct calculation of the advisory Sentencing Guidelines is a reasonable sentence in this case.

**I.   BACKGROUND**

During June 2006, representatives from the Queensland Police Service, Brisbane, Australia, informed members of the Innocent Images Unit of the FBI of an international child pornography investigation regarding numerous subjects residing in various countries.  Several members of the group were found in the US, and have been convicted of being members of a Child Exploitation Enterprise by the USAO in the Northern District of Florida.  The group was a sophisticated and extremely organized group of Internet

users involved in the prolific trade/distribution of child pornography. The group employed highly technical and advanced security measures to avoid law enforcement detection.

After the arrest of one member of the group, s/he agreed to allow law enforcement access to certain passwords, which allowed them to infiltrate the group. The group consisted of approximately 48 members. The group developed outside contacts in the child pornography industry whereby they made specific requests for the production of new child pornography material. In several instances, it appears the group was able to order new child pornography movies produced solely for the benefit of the group (that is, material not previously released).

Within this group, the "Tara series," an extremely graphic series of photos and videos of a young girl being violently sexually assaulted, was first seen by law enforcement around the same time they infiltrated the group. The series had not been seen prior to the investigation into the group. The most recent images of "Tara" were transmitted to the enterprise during November 2007. The images became increasingly violent during the course of the investigation, with the most recent images showing the perpetrator wielding a large knife pressed against the victim's genitals as well as the victim's face and neck. The victim's composure in the images appears progressively more distressed as well. In various still photos and videos, the child is seen being anally raped with

an extremely large sex toy, being brutally forced to perform oral sex on an adult male, and being vaginally raped by an adult male. She is also seen in various locations, including a home bedroom, a hotel room and two different cars. Various law enforcement agencies throughout the world worked to try and identify the child and the perpetrator. This task was made extremely difficult because the face of the perpetrator, and sometimes the child, was pixilated or blurred. In one series of images, both the child and the perpetrator are wearing Mardi Gras-type masks.

Various kinds of analyses were done on the images in the still and video images. The analysis lead to the defendant's door on June 16, 2008. On that day, agents with the FBI went to the residence of the defendant. Huskey was arrested. Huskey admitted to sexually molesting his own 9 year-old daughter since she was approximately 6 years old and admitted to posting images and videos of her sexual molestation on the internet. Huskey stated that he had several thousand images of the child's molestation and several hundred videos of sexual molestation on an external hard drive connected to his desktop computer. A view of the interior of the house indicated several matches to the background interior images found on the "Tara" series images. Huskey admitted that a red digital camera, found in his bedroom, was used to record the sexual abuse of the child.

The FBI seized various computer storage devices. A review of the computer media has revealed hundreds of files, both still photos and videos, of Huskey's daughter as depicted in the "Tara" series. These files were in various states, some were unedited, some were in a state of pixilation, like some of those uploaded to the internet and seen during the investigation. Hundreds of other images of child pornography, that did not depict his daughter, were also discovered. In a locked closet, agents found various items of sexual paraphernalia, some of which matched those seen in the internet videos of the abuse of the child.

On June 17, 2008, Huskey's daughter was interviewed. She disclosed that Huskey had been sexually abusing her for several years, and had sexually assaulted her within the last day, at the time of the interview. She described that he recorded her abuse using a red digital camera. She also said that the defendant was uploading the images of her abuse to the Internet, and that he had shown her many images of her own abuse. She estimated the abuse began when she was 5 years old. She also said he sexually assaulted her many times a week, including the day before agents arrested Huskey.[1]

---

[1] The defendant claims the fact that the last images uploaded to the group suggests "he was attempting to end that aspect of his sins." (See Defendant's Sentencing Memo, pg. 2, FN 1). Since the child said he assaulted her the day before his arrest, it does not seem he was interested in repentance until his arrest.

## II.   **DEFENDANT'S ACCEPTANCE OF RESPONSIBILITY WAS NOT REMARKABLE**

The defendant asks the Court to consider United States v. Rodriquez, 64 F.3d 638 (11th Cir. 1995) and "reward" the defendant's acceptance of responsibility by lowering his sentence below the applicable advisory Guideline range.  (See Defendant's Sentencing Memo, pp. 5-6).  As the defendant notes, however, the decision lies fully within the discretion of this Court.  In a case similar to that of defendant Huskey, United States v. Johnson, 451 F.3d 1239 (11th Cir. 2006), the Eleventh Circuit addressed whether U.S.S.G. § 5G1.2(d) was properly applied to impose a statutory maximum sentence when the defendant's advisory Guidelines were calculated at life imprisonment.  In Johnson, the defendant, a previously convicted sex offender who was nonetheless assessed a criminal history category I, was faced with the application of § 5G1.2(d) because his Guidelines calculation was higher than the statutory maximum for any one of the three offenses of conviction.  Johnson, 451 F.3d at 1241-1242.  Johnson entered a plea of guilty to two counts of producing child pornography, and one count of distributing child pornography.  (Id. at 1241).  Over a period of three years, Johnson took sexually explicit photos of two children that he distributed via the Internet.  (Id.).  Johnson also molested both boys, and allowed two men to molest one of the children.  (Id.).

His maximum possible statutory sentence, with all three counts to run consecutively, was 140 years' imprisonment. (Id. at 1241-1242). The advisory Guidelines calculated that defendant's sentence should be life, and, pursuant to § 5G1.2(d), that the Court should sentence Johnson to the statutory maximum on each count, and run each sentence consecutively. (Id.). The Court, noting, *inter alia*, "the psychological damage" that was inflicted on the victims, sentenced Johnson to 140 years' imprisonment.

Johnson appealed, claiming his sentence was cruel and unusual under the Eighth Amendment. (Id. at 1242). The Eleventh Circuit agreed that § 5G1.2(d) was properly applied, and that he could not meet the requirement of showing a sentence within the statutory limits violated the Eighth Amendment. (Id. at 1243). Further, in response to Johnson's claim that a thirty-year sentence was more reasonable, the Court approvingly cited the district court's explanation of its findings under the § 3553(a) factors, and held the sentence was reasonable. (Id. at 1244). The Eleventh Circuit also specifically noted the district court's comments about the psychological impact on the victims of the crime as appropriately reflective of one of the factors required to be considered under § 3553(a). (Id.).

Defendant Huskey claims that a Guideline sentence would not properly account for his "remarkable acceptance of responsibility." (See Defendant's Sentencing Memo, pg. 4). He also argues that a

6

70-year sentence "would ignore his overt demonstrations of repentance." (Id.). In claiming repentance, the defendant cites his post-arrest confession, his consent to search, and his entry of a plea of guilty. It is hardly remarkable that a defendant elected to confess and plead guilty when his heinous offenses were repeatedly captured on video.

As a practical matter, the defendant had no choice but to enter a plea and claim himself a sorrowful, repentant man. Such actions are not remarkable, nor particularly penitent. The defendant's newly repentant self has come only after his arrest, and his confession a mere day after his final assault on his little girl.

### III. ALL OF THE 3553(a) FACTORS SUPPORT A SENTENCE OF 70 YEARS.

When imposing a sentence, the Court is required to consider the Sentencing Guidelines, but must ultimately fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). The United States contends that, in light of the factors set forth in 18 U.S.C. § 3553(a), a 70-year sentence is reasonable and appropriate.

Title 18, United States Code, § 3553(a) states, in part, that when determining a reasonable sentence, the court must consider:

    (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2)   the need for the sentence imposed –

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The § 3553(a) factors also include "the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

1. **The Nature and Circumstances of the Offense and the History and Characteristics of The Defendant.**

In this case, the defendant pled guilty to producing, distributing, and receiving child pornography.  These are very serious crimes for which the defendant must be punished.  There are few crimes that justifiably rouse societal horror more than this one. The defendant repeatedly, and brutally, assaulted his very young daughter for years.  If his crime had stopped there, it would have been serious enough.  However, he went further, abusing her for the pleasure of others.  He sent the child's images out over the Internet, in what has become known as one of the most sought-after series of child pornography in the world.  The defendant's lack of criminal history is largely irrelevant here.  He sexually assaulted his child for years undetected. The nature and circumstances of this case, and this defendant, warrant a serious sentence.

The defendant also claims that the defendant's "honorable history" deserves a below-Guidelines sentence. (See Defendant's Sentencing Memo, p. 11). For the last 4 years, the defendant spent a large amount of time: pressing a knife against his daughter's genitals at the request of Internet watchers; inserting objects in the child's vagina to make her better ready for his rape of her; forcing the child to orally sodomize him quite brutally; forcing objects, including his own penis, into the child's rectum; videotaping all of the above and expressing his extreme pleasure in it during the taping; and sexually assaulting the child repeatedly for material to send over the Internet where her abuse will be perpetuated for many, many years. While the defendant would most assuredly like this Court to ignore his crimes and focus on his lack of arrests, such is impossible given the length and breadth of his egregious offenses.

2. **The Need for the Sentence Imposed to:**

**(A) Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

The distribution of child pornography creates a market for its production, which inevitably leads to the abuse of children. Osborne v. Ohio, 495 U.S. 103, 109-11 (1990). Furthermore, the collection of child pornography "causes the child victims continuing harm by haunting the children in years to come." Id. at 111, 110 S.Ct. 1691 (citation omitted); see also United States v. Sherman, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession,

receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their interests in avoiding the disclosure of personal matters."). Because child pornography is inextricably linked to the sexual abuse of children, the Supreme Court has repeatedly held that the State's preeminent interest in protecting children warrants upholding laws designed to completely stamp-out such material. See Osborne v. Ohio, 495 U.S. at 110; New York v. Ferber, 458 U.S. 747, 761-62 (1982); accord Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249 (2002) (where the images are themselves the product of child sexual abuse, the State has an interest in stamping them out without regard to any judgment about their content, and the fact that a work contains serious literary, artistic, or other value does not excuse the harm it causes to its child participants).

In this case, we have more than trafficking in images of the sexual assault of children. In this case, the defendant used his own child as the victim of his prurient scheme to trade child pornography with others. As the Court has seen from the video images submitted in chambers by the Government, the defendant's behavior during the sexual assault of his child could not have been more callous and uncaring. The words he uses when assaulting the child demeans and objectifies the child in a way that no child should suffer, especially not from a parent. Child sexual abuse

10

has been directly linked to a variety of psychiatric conditions and behaviors into a victim's adulthood. A lifetime prevalence of major depression in adult women who were victims of childhood sexual abuse is three to five times more common than in non-abused women. (*Ten-Year Research Update Review: Child Sexual Abuse*, Frank W. Putnam, M.D., **Journal of the American Academy of Child and Adolescent Psychiatry**, Vol. 42, Number 3, March 2003). While still children, victims of sexual abuse suffer from major depression at far higher than normal rates. (Id.). It is especially disturbing that victims of child sexual abuse are far more likely than their peers to be arrested for sex crimes or prostitution. (Id.). As noted above, the Supreme Court agrees that a market for child pornography "inevitably" leads to the sexual abuse of children, as it did in this case. (Osborne, 495 U.S. at 109-11). A serious sentence, one like that recommended by the advisory Guidelines, is a reasonable sentence for the crimes of conviction.

    (B)  **Need to Deter Future Criminal Conduct**

Sentencing this defendant to 70 years, a sentence which surely reflects the seriousness of his crimes, will promote deterrence.

(C)  **Need to Protect the Public from the Defendant's Future Criminal Conduct**

Similarly, sentencing the defendant to a Guideline sentence will protect the public from the defendant's future criminal conduct.

(D)  **Need to Provide Needed Treatment to Defendant**

U.S. Probation has researched the availability of sex offender treatment programs offered within the Bureau of Prisons.  There are several sex offender management programs located throughout the United States at facilities with differing security levels, and one sex offender treatment program located at FMC Devens in Massachusetts.  If the defendant is designated to a BOP facility offering such a program, then sentencing the defendant within the applicable Guideline range would allow him time to participate in such treatment, assuming that he volunteers for the program and makes good faith efforts at participation.

(E)  **Need to Avoid Unwarranted Disparities**

Sentencing the defendant to a period of incarceration as recommended by the advisory Guidelines prevents there being a sentencing disparity with similarly situated defendants such as the defendant in the Johnson case.

## CONCLUSION

In conclusion, the Government respectfully requests that the Court consider the factors of 18 U.S.C. § 3553, including the nature and circumstances of the offense, the history and circumstances of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect against further crimes of the defendant, and in so

doing, sentence the defendant to 70 years' imprisonment.

Respectfully submitted this 3rd day of March, 2009.

>Respectfully submitted,
>
>DAVID E. NAHMIAS
>UNITED STATES ATTORNEY
>
>/s/ Francey Hakes
>FRANCEY HAKES
>ASSISTANT U.S. ATTORNEY
>600 U.S. Courthouse
>75 Spring Street, SW
>Atlanta, Georgia 30303
>(404)581-6185
>Ga. Bar No.317420

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by filing same in the Court's electronic filing system for automatic delivery to:

        Matt Dodge
        Federal Defender Program

This 3rd day of March, 2009.

                         /s/ Francey Hakes
                         FRANCEY HAKES
                         ASSISTANT UNITED STATES ATTORNEY